**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF NEW YORK**

---

**LUV N' CARE, LTD. and ADMAR INTERNATIONAL, INC.,**

*Plaintiffs,*

**v.**

**SHIBOLETH, LLP, and its members and of counsel, AMNON SHIBOLETH, OREN HEIMAN, MORRIS E. CO-HEN, CHARLES B. MANUEL, and ROCHELLE R. WEISBURG, and DOES 1-10,**

*Defendants.*

**Civil Action No .**

1:13-cv-04720-RRM-LB

Jury Trial Demanded

## SECOND AMENDED
## COMPLAINT

Luv n' Care, Ltd. ("Luv n' Care") and Admar International, Inc. ("Admar") (collectively, "Plaintiffs" or "Luv n' Care"), by their attorneys, hereby complain, jointly and severally, of Defendants Shiboleth, LLP, and its members Amnon Shiboleth and Oren Heiman, and its "of counsel" Morris E. Cohen, Rochelle R. Weisburg and Charles B. Manuel and other Does 1-10 (collectively, sometimes "Shiboleth", "Shiboleth *et al.*" or "Defendant(s)"), as follows:

1. This is an action (a) for fraud, and (b) for the legal malpractice committed by Shiboleth *et al.* in their legal representation of Luv n' Care in prior litigation for federal unfair competition, trademark infringement, and dilution under Section 43 of the Lanham Act, 15 U.S.C. §1125, and for unfair competition, deceptive and unfair business practices under the common law and the law of the State of New York, and in particular with regard to a lawsuit entitled *"Luv n' Care et al. v. Walgreen Co., et al."*, Case No. 08CIV 4457 (DC/HP), as filed 5/13/2008, and brought before the United States District Court for the Southern District of New York.

## THE PAR-
## TIES

2. Plaintiff Luv n' Care is a corporation organized and existing under the laws of the State of Louisiana, and having a principal place of business at 3030 Aurora Avenue, Monroe, Louisiana 71201.

3. Plaintiff Admar is a corporation organized and existing u n d e r the laws of the State of Delaware, and having a principal place of busi-ness at 3 030 Aurora Avenue, Monroe, Louisiana 71201. Admar is an affiliate of Luv n' Care.

4. Upon information and belief, Defendant Shiboleth, LLP is a do-mestic registered limited liability partnership of the State of New York, and has a principal place of business at 1 Penn Plaza, Ste. 2527, New York, New York, 10119.

5. Amnon Shiboleth is a lawyer licensed to practice law in the State of New York, a Member of Shiboleth, LLP, a citizen of the Nation of Israel, and maintains a residence at 767 Montauk Highway, West Hampton Beach, New York 11978, within the jurisdiction of this Court, the United States District Court for the Eastern District of New York.

6. Oren Heiman is a lawyer licensed to practice law in the State of New York, a Member of Shiboleth, LLP, a citizen of the Nation of Israel and of the United States of America, State of New York, and upon information and belief resides at 30 W 63rd Street, Apt. 8D, New York, New York 10023-7111.

7. Morris E. Cohen is a lawyer licensed to practice law in the State of New York, was held out to the public by Shiboleth LLP at its website to have been "Of Counsel" with Shiboleth, LLP, at the times and places pertinent hereto, is a citizen of the United States and maintains a residence at Brooklyn, New York, which is within the jurisdiction of the United States District Court for the Eastern District of New York.

8. Charles B. Manuel is a lawyer licensed to practice law in the State of New York, is represented to the Public and to Luv n' Care by Shiboleth, LLP to be "Of Counsel" and "Head of Litigation" with Shiboleth, LLP, and on information and belief is a citizen of the United States, State of Florida and resides with the State of New York.

9. Rochelle R. Weisburg is a lawyer licensed to practice law in the State of New York, is "Of Counsel" with Shiboleth, LLP, on information and belief is a citizen of the United States and/or Israel, and up-

on information and belief maintains a residence at 629 Kappock Street, Apt 4H, Bronx, New York 10463-7748.

10. Upon information and belief, Does 1-10, whose identities are presently unknown, are lawyers licensed to practice law in the State of New York, are Members of and/or are "Of Counsel" to Shiboleth, LLP, on information and belief are citizens of the United States and/or Israel, and maintain residence(s) within New York State.

## JURISDICTION AND VENUE

11. This Court has personal jurisdiction over Shiboleth, inasmuch as its lawyers are licensed to practice law in t h e State of New York, and the accused tortious activities of Shiboleth, LLP *e t  a l .* occurred within the State of New York.

12. The Eastern District of New York has jurisdiction over the instant action pursuant to 28 U.S.C. § 1332, as the respective parties are citizens of different states a n d / o r a foreign s t a t e, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

13. Venue in the Eastern District of New York is proper pursuant to 28 U.S.C. § 1391(b)(1), as at least one of the Defendants resides in this District.

## FACTS RELEVANT TO ALL CLAIMS

14. Shiboleth holds itself out to the public as a law firm, on the Internet at http://www.shiboleth.com/. And in particular and at all times relevant hereto, Shiboleth has held itself out to the public as having expertise in litigation and intellectual property law, as follows:

> Shiboleth's experienced team of corporate and intellectual property attorneys helps clients in the technology, life sciences, industrial and other fields establish operations in the US, raise capital, operate legally and obtain and protect intellectual property rights in the United States and around the world. Our attorneys work closely with a variety of businesses and inventors, including well-established companies, venture capital companies and emerging companies with technological assets as well as not-for-profit organizations. We offer a variety of high-tech and intellectual property services, including:

> Internet and E-Commerce. Our attorneys have experience addressing those legal issues more unique to Internet and e-commerce companies. These include advice with respect to jurisdictional issues, including exposure to lawsuits and claims; privacy rules; negotiation and preparation of agreements with vendors and suppliers of goods

and services; and structuring strategic alliances and the preparation of legal documentation related thereto.

<u>Technology Law</u>. We provide services with respect to financing, including private placements and venture capital monies; structuring equity incentives for employees; protection of intellectual property rights; and drafting and negotiating agreements related to commercial exploitation of the technology, including marketing, licensing, and agency agreements.

<u>Registering Trademarks, Copyrights and Patents</u>. We offer our clients the ability to register trademarks, copyrights and design patents.

<u>Litigating Intellectual Property Rights</u>. We always seek to settle any dispute without court proceedings. When litigation is unavoidable, our litigators know how to fight for clients and protect their rights. We are also experienced in anti-counterfeiting and intellectual property enforcement matters

<u>Intellectual Property Transactions</u>. Whether our clients buy or sell their company or just a part of their portfolio, we are able to negotiate licenses and related agreements that protect the business and legal interests of our clients. Working closely with our corporate department, we conduct due diligence reviews for a variety of corporate ventures and are able to record any changes of your IP registrations once the deal is <u>complete</u>.

    See,

<u>http://web.archive.org/web/20090330193531/http://www.shiboleth.com/hightech.htm, as captured by Archive.com</u> on March 22, 2009.

    15. At all times material hereto, Shiboleth represented to the Public including Luv n' Care that one Morris E. Cohen, Esq. held the status, authority and responsibilities of "Of Counsel" to the Shiboleth law firm, and

expressly stated: "Morris E. Cohen is Of Counsel to the New York office. Morris began his legal career in 1994 and joined Shiboleth in 2008." Wherefore, Mr. Cohen had indicia of authority, if not actual authority, to act as an agent within the scope of his duties as a lawyer in behalf of the principal Shiboleth, and thus Shiboleth is bound via principles of *respondeat superior* thereby. Moreover, Shiboleth was aware that Mr. Cohen was representing Luv n' Care, and approved of and participated with Mr. Cohen in representing Luv n' Care, stating on Shiboleth's website: "Recently, he served as lead counsel for the plaintiff in *Luv n' care, Ltd. v. Insta-Mix, Inc., et al.*, 438 F.3d 465 (5th Cir. 2006), *cert. denied*, 126 S. Ct. 2968, *re-h'g. denied*, 127 S.Ct. 21 (2006)." *Id.*

16. At all times material hereto, Shiboleth represented to the public that one Rochelle R. Weisburg, Esq. held the status, authority and responsibilities of "Of Counsel" to the Shiboleth law firm, and expressly stated: "Rochelle R. Weisburg is Of Counsel to the New York office. Her practice focuses on bankruptcy and litigation in both state, federal, and bankruptcy court." Wherefore, Ms. Weisburg had indicia of authority, if not actual authority, to act as an agent within the scope of her duties as a law-

yer in behalf of the principal Shiboleth, and thus Shiboleth is bound via prin-

ciples of *respondeat superior* thereby.

17. Yet further, Shiboleth accepted material responsibilities, includ-

ing (i) docketing and other administrative work, and moreover (ii) legal

work performed by Defendants Cohen and Weisburg and other Shiboleth

lawyers on and in regard to the lawsuit entitled *"Luv n' Care et al. v.

Walgreen Co., et al."*, Case No. 08 CIV 4457 (DC/HP), and for which Shi-

boleth had billed, and which Luv n' Care paid.

18. In addition, Shiboleth and particularly its Litigation Department,

headed by and supervised by one Charles B. Manuel, Esq., represented and

held out to the Public and to Luv n' Care on Shiboleth's website, as fol-

lows: "Charles Manuel is Of Counsel and Head of Litigation for Shiboleth

LLP in New York."


19. As an inducement to the Public and to Luv n' Care to generate

trust and confidence in the hopes of marketing its legal services, Shi-

boleth, LLP had further represented to the Public and to Luv n' Care that it

had a "25+ member" law firm, when in truth the Members of its part-

nership were far fewer in number.

20. The Members of Shiboleth, LLP had an uncompromising duty to supervise the work of the "Of Counsel" lawyers and non-lawyer employees of the Firm. And, Mr. Manuel as "Head of Litigation" for Shiboleth had an uncompromising duty to supervise the work of the lawyers in the firm and non-lawyer employees who did litigation work, and in particular those lawyers, including but not limited to Defendants Cohen and Weisburg who did litigation work for Luv n' Care. And Defendants Cohen and Weisburg had a duty to supervise the work of employee workers at Shiboleth who did work under their direction.

21. The Members of Shiboleth, LLP and Mr. Manuel, Mr. Cohen and Ms. Weisburg, utterly failed in their duties of adequate supervision, as set forth in the prior paragraphs hereof.

22. Shiboleth, LLP held out to the Public on its website and further represented to Luv n' Care, and which yet further formed material representations upon which Luv n' Care relied to entrust Shiboleth with providing legal services to Luv n' Care in connection with such intellectual property litigation, as follows:

> Shiboleth is a boutique law firm with top-ranked practices in corporate, litigation, real estate and high-tech/IP. Through our office in New York and our affiliates in Tel Aviv and Shanghai,

10

we offer our clients professional, responsive, ethical and cost-effective legal services in a personalized and amicable setting.

23. Shiboleth, LLP had further represented to Luv n' Care that its such Litigation Department was "first class", and in particular possessed considerable experience in the litigation and trial of intellectual property cases, and except for Mr. Cohen, none of which was true. Ms. Weisburg was not an experienced litigation lawyer, and Messrs. Manuel and Cohen did not adequately train and supervise Ms. Weisburg and others of those Shiboleth personnel who performed legal and/or administrative services on behalf of Luv n' Care. Nor did Mr. Manuel adequately supervise the docketing department of Shiboleth that was charged with the responsibility of docketing significant dates in the litigation schedule of the said lawsuit of *Luv n' Care v. Walgreen Co. et al.*

24. Based upon these inducements and representations by Shiboleth, Luv n' Care in justifiable reliance thereon was induced to permit Shiboleth to provide legal services in its behalf in connection with such litigation. However, Shiboleth's Litigation Department and its personnel were inadequately trained, maintained and supervised by Mr. Manuel and others.

25.  Shiboleth through its authorized agents Attorneys Cohen and Weisburg and others who are lawyers with Shiboleth and/or employees of Shiboleth did provide legal services to Luv n' Care in the said intellectual property litigation before the United States District Court for the Southern District of New York, the Complaint in such litigation having been filed on May 13, 2008.  See Exhibit A hereof.

26. Subsequently, and on November 7, 2008, the assigned District Court judge in that case, Judge Chin, set a discovery cut-off date of May 1, 2009, and which was re-confirmed in the Court's Order of April 2, 2009. See Exhibit B hereof.

27. Defendants Shiboleth *et al.* did not serve timely written discovery requests, which under the Rules of the Court require 30 days for response under Rule 33 (Interrogatories) and Rule 34 (Requests to Produce Documents and Things). Under the Rules of the Court, a discovery request which does not leave time sufficient before the close of discovery to require a response in accordance with Rules 33 and/or 34 of the Federal Rules of Civil Procedure, is untimely and thus need not be answered.

28. After having had a substantial time in which to serve discovery requests, but negligently not having done so, and which was materially

12

caused by Shiboleth's inability to handle this type of work, and the negligence and neglect of the Shiboleth docketing department, as unsupervised by Mr. Manuel, and by Defendants Cohen and Weisburg, as unsupervised by the Head of Litigation, Mr. Manuel, and in an (albeit ineffective) attempt to reduce the severely damaging effects of its negligence in failing to file timely discovery requests, Shiboleth then further served a Notice of Deposition to take Walgreen's corporate deposition under Rule 30(b)(6) Fed. R. Civ. P., naming therein 66 diverse categories of subjects. See Exhibit C hereof.

29. Walgreen's consented to appear for deposition outside of the time permitted by the Court, but continued to object to the large number of belatedly requested categories, which had been caused by Shiboleth's negligence.

30. At the deposition, Walgreen Co. supplied only some of the belatedly requested information on its sales and/or profits for (i) the copied "two-pack soft top", and (ii) some others on the infringed "hard top cup", but continued to refuse to produce information on the product lines comprising, *inter alia,* the infringing "pacifiers", "baby bottles", and "no-spill cups", for example, and specifically refused to do on the grounds that Shi-

boleth had not made timely requests under the discovery schedule and discovery cut-off date set by the court, and under the Rules of the court. Thus, Shiboleth had failed to obtain this vital information that hence materially damaged Luv n' Care's case against Walgreen Co., and specifically Luv n' Care's ability to present proof at trial in order to recover adequate and complete compensation for Walgreen's infringements of Luv n' Care's intellectual property rights, and moreover Luv n' Care's lost sales of such products.

31. Moreover, and in its Order of February 4, 2010 denying dilatory motion filed by Shiboleth *et al.* to transfer and/or to amend, the Court had yet further noted that Shiboleth *et al.* had materially misstated the facts regarding the discovery cut- off date and the belated discovery requests filed by Shiboleth *et al*. See Exhibit D hereof.

32. Yet further, Shiboleth *et al.* negligently failed to provide an appropriate expert report, resulting in the Court ordering that the proffered expert witness would not be permitted to testify thereon at the trial of the cause.

33. Thus, Defendants Shiboleth *et al.* -- in violation of their ethical duty of diligent and competent representation -- had failed to obtain admissible evidence of yet further actual damages and/or profits of Walgreen

Co., due to Shiboleth *et al.*'s negligent failure to serve timely discovery requests, and failure thereafter even to attempt to cure their negligence.

34. Subsequently, the case was settled with Walgreen Co. paying only $1.5 million in damages/profits based upon the partial discovery of only about 20% of the actual total of Walgreen's sales of the accused infringing products, but not including any discovery on multiple millions of dollars of additional sales of infringing products. Hence, if timely discovery had been served and properly pursued by Shiboleth *et al.*, Luv n' Care would have received a yet further monetary recovery.

35. Notwithstanding the above incidents of Shiboleth *et al.*'s negligence and malpractice, and particularly including the negligence, malfeasance and neglect of Shiboleth's docketing department, *inter alia,* as unsupervised by Mr. Manuel, and the devastating effect thereof that had severely limited the amount of Luv n' Care's monetary recovery based upon Walgreen's infringement of Luv n' Care's intellectual property rights, and which had resulted in a substantial diminution of Luv n' Care's sales and profitability, Shiboleth *e t a l.* fraudulently and actively concealed the above material facts from Luv n' Care.

36. Shiboleth *et al.*'s legal representation of Luv n' Care continued with regard to the same subject matter of representation wherein the malpractice had been committed until at least as late as dismissal of the underlying lawsuit on the October 6, 2010.

## FIRST COUNT (Legal Malpractice)

37. Plaintiffs repeat and reallege each and every allegation hereinabove set forth with the same force and effect as if more fully hereinafter set forth.

38. Shiboleth *et al.* failed to exercise the reasonable skill and knowledge commonly possessed by members of the legal profession in this legal community. As a result, Shiboleth *et al.* and each of the said defendants jointly and severally committed legal malpractice through the at least the following acts:

> a. failure to serve appropriate and timely discovery requests on the subject of accused sales and damages/profits;

> b. failure to obtain admissible evidence of more than $6 million in actual damages or profits of the Defendant Walgreen, due to said failure to serve timely discovery requests;

> c. failure to advise Luv n' Care about Defendant's said tardy discovery, and comprising acts of nonfeasance, malfeasance, and misfeasance;

d. failure to bring a motion for further discovery (out-of-time)

on sales and damages/profits;

e. failure to bring a motion for shortening the discovery response period to less than 30 days to permit discovery within the discovery period as ordered by the Court;

f. materially misstating the facts to the Court regarding Shiboleth *et al.*'s failure to serve timely discovery requests;

g. failure to provide an appropriate and timely expert report;

h. failure to advise Luv n' Care regarding Shiboleth *et al.*'s fraudulent and active concealment of Shiboleth *et al.*'s malpractice; and

i. failure to properly docket litigation due dates and especially the discovery cut-off date ordered by the court.

39. Luv n' Care would have recovered monies for all of its injuries, including those related to lost sales, income, and profits thereunder, and/or would have achieved a substantially larger settlement from Walgreen Co., but-for Shiboleth *et al.*'s several acts of negligence, which individually and collectively had proximately caused severe damage to Luv n' Care.

40. As a result of Shiboleth *et al.*'s misconduct, including legal malpractice and fraud, Luv n' Care has been damaged not only with regard

to the Walgreen Co. lawsuit and the settlement thereof, but potentially with regard to all infringers of Luv n' Care's rights in subsequent litigation, and further because such inadequate Walgreen settlement figures would be discoverable and would be presented to those courts as standing precedent. Accordingly, the Plaintiffs have been damaged in an amount to be determined at trial, but which is believed will be in an amount of not less than $10 million.

## SECOND COUNT (Fraud)

41. The allegations of each of the foregoing paragraphs are respectfully incorporated by reference.

42. Shiboleth *et al*.'s above representations and inducements to Luv n' Care (i) were in regard to the material matters of the experience, capabilities and qualifications of the lawyers of Shiboleth and its personnel to provide legal services to and in particular to represent Luv n' Care adequately and professionally in the provision of legal services in regard to litigation matters significantly affecting Luv n' Care's intellectual property rights, (ii) were false, (iii) were knowingly false, (iv) were made with intent and knowledge that Luv n' Care would rely thereon, (v) which Luv n' Care jus-

tifiable did so rely, and (vi) which were to Luv n' Care's substantial damage and detriment.

43. Shiboleth *et al*.'s said conduct constitutes fraud.

44. Shiboleth *et al*.'s said fraud was committed within the relevant Statute of Limitations for fraud of six (6) years.

45. Shiboleth *et al*.'s fraud can only be redressed thru the grant of significant compensatory and punitive damages, and with an appropriate injunction to prevent Shiboleth from committing such further conduct to damage yet other members of the Public.

## JURY DEMAND

A jury trial is respectfully demanded on all matters so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Luv n' Care demands judgment, jointly and severally, against defendants Shiboleth LLP, and its Members Amnon Shiboleth and Oren Heiman, and its "Of Counsel" Charles B. Manuel, Morris E. Cohen and Rochelle R. Weisburg, and any others designated as Does 1-10 herein,  as follows:

a. On each of the First and Second Counts against Defendants in the sum of at least $10 million each, or such other amount as may be determined upon the trial of this action;

b. Suitable punitive damages to deter others from such conduct and to punish the wrongdoer Defendants, and specifically in a Constitutionally permissible amount not to exceed 10X of the recovery for actual damages;

c. The costs and disbursements of this action;

d. Reasonable attorney's fees; and

e. Such other relief as this Court deems just and proper.

Respectfully submitted, this 24th day of April, 2015,

*/s/Anthony H. Handal*
Anthony H. Handal
N.Y. Fed. Bar No. AH5104
(Admitted in NY 1/16/75)
**Handal & Morofsky, LLC**
420 Lexington Avenue
Suite 300
New York, NY 10170
Phone: (646) 770-1010
 handal@handalglobal.com

20

Of counsel:

Robert M. Ward
**Dilworth IP, LLC**
2 Corporate Drive
Suite 206
Trumbull, CT 06611
Telephone: (203) 220-8496
Mobile: (404) 606-6480
Facsimile: (203) 220-8497
 rward@dilworthip.com