UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LUV N' CARE, LTD. and ADMAR INTERNATIONAL, INC., <br><br> Plaintiffs <br><br> v. <br><br> SHIBOLETH, LLP, and its members and of counsel, AMNON SHIBOLETH, OREN HEIMAN, CHARLES B. MANUEL, and ROCHELLE R. WEISBURG, and DOES 1-10, <br><br> Defendants. | Case No. 1:13-cv-04720-RRM- JM <br><br> Jury Trial Demanded |

**LUV N' CARE'S MEMORANDUM IN OPPOSITION TO SHIBOLETH *et al.*'s MOTION TO DISMISS**

Unfortunately, Shiboleth *et al.*'s much belated[1] motion to dismiss focuses upon personalities, distraction, vitriolic verbiage, irrelevancy and immateriality, and undue repetition of the multiplicity of arguments that Shiboleth has previously placed before the Court[2].

I. **The Subsisting Attorney-Client Relationship Between Luv n' care and the Shiboleth Law Firm**

A. **Shiboleth Cannot Dispute the Prevailing Facts.**

Unfortunately, Shiboleth has continued its incorrect argument that supposedly there was no attorney-client relationship between the Shiboleth Law Firm and Luv n' care, despite the mountain of evidence to the contrary, including: (i) an extensive person-to-person engagement conversation between attorney Shiboleth and Luv n' care's President,

---

[1] Shiboleth is in default, as its motion violates the Court's Order of April 15, 2015 by more than 3-months. (See Letter dated June 22, 2015 (Doc. 43; filed 6/23/2105).

[2] For example -- and among many other errors of fact and law -- Shiboleth re-argues that Luv n' Care is somehow bound by the alleged results of litigation between Attorney Cohen and the Shiboleth Law Firm, to which Luv n' care was not a party.

Mr. Eddie Hakim; (ii) multiple consultations between Luv n' care's general counsel, Mr. Guerriero, and the Shiboleth lawyers regarding the legal services being performed by the Shiboleth Law firm for Luv n' care; and (iii) bills for legal services **on Shiboleth's letterhead** that specifically refer to work done by Shiboleth lawyers, including court appearances **for Luv n' care** on the underlying Walgreen's case wherein the malpractice was committed. See, *e.g.,* Docs. 32-35; filed 8/15/2014, which are respectfully incorporated by reference herein.

The evidence before the Court is clear. Doc. 35-2, filed 8/15/2014, is a compendium of 107 pages of Shiboleth's bills for legal services. The Shiboleth bills for legal services are set forth on the Shiboleth letterhead:



Payments were to be made into Shiboleth's trust account for work done by Shiboleth lawyers on a wide variety of legal projects for Luv n' care, including the underlying Walgreen's case. The Instructions for Payment are:

*Funds can be wired to: Citibank, N.A., 460 Park Avenue, New York, NY 10022*
*ABA #021000089 -- SWIFT Code CITI US 33 (for international wires)*
*Credit to: Shiboleth, Yisraeli, Roberts & Zlsman, LLP • Account 9937723815*
*Please advise by fax (212·563-7108) or email (accounting@shiboleth.com) when you wire transfer funds.*
***Please pay balance due within 15 days of date of invoice. Thank you.***

---

Shiboleth's legal work done on the subject Walgreen's lawsuit for Luv n' care is identified on the Shiboleth letterhead bills as:

**Luv n' care, Ltd. and Admar International Inc. Corp. v. Walgreen and Kmart Corp. -- Infringement lawsuit against Walgreen adn [sic] Kmart**

And, for example (among many others), billing entries by Shiboleth lawyer, defendant Rochelle Weisburg (RW), for May12, 2008, provide:

4009-150  Review and analysis of modified complaint.          0.6   97.50   RW

4009-150  Meet with M. concerning modified complaint followed by calls with J. Guerriro [sic] and Natilie, then follow up call with A. Sol all with respect to information concerning complaint and allegations.          1.5   243.75   RW

(explanation added) (See Doc. 35-2; filed 8/15/2014).

Wherefore, the Shiboleth firm was counsel for Luv n' care from the very beginning of the Walgreen's lawsuit, and remained Luv n' care's counsel of record until the very end of that lawsuit.

### B.     The Governing Law Shows the Existence of an Attorney-Client Relationship.

Shiboleth's *non sequitur* -- that these bills are addressed nominally to Mr. Cohen (*i.e.*, as Luv n' care's agent) -- cannot change the identity of the client, Luv n' care, because it was **Luv n' care** for whom the Shiboleth work was done.

As the court stated in the case of *Westinghouse Elec. Corp. v. Kerr-McGee Corp.,* 580 F. 2d 1311, 1317 (7th Cir. 1978);

> **The district court found that "Kirkland sent its legal bills to the API, and was compensated only by the API." 448 F.Supp. at 1301. A professional relationship is not dependent upon the payment of fees[6] nor, as we have noted, upon the execution of a formal contract.[7]**

---

[6] Allman v. Winkelman, 106 F.2d 663, 665 (9th Cir. 1939), cert. denied, 309 U.S. 668, 60 S.Ct. 608, 84 L.Ed. 1014 (1940) ("lawyer's advice to his client establishes a professional relationship though it be gratis"); Fort Meyers Seafood Packers, Inc. v. Steptoe and Johnson, 127 U.S.App.D.C. 93, 94, 381 F.2d 261, 262 (1967), cert. denied, 390 U.S. 946, 88 S.Ct. 1033, 19

3

L.Ed.2d 1135 (1968) (**Re: attorney's fees paid by third party: "If appellant is not obligated to pay appellees for their services, it does not follow that there was no attorney-and-client relation");** Dresden v. Willock, 518 F.2d 281, 286 (3d Cir. 1975) ("The fact that Dresden was to be paid by receiving stock in the enterprise did not change the nature of the [attorney-client] relationship"); E. F. Hutton & Co. v. Brown, 305 F.Supp. 371, 388 (S.D.Tex.1969) (Relation of attorney and client "is not dependent on the payment of a fee").(emphasis added).

Also see, *Grace v. Center for Auto Safety*, 72 F. 3d 1236, 1242 (6th Cir. 1996), citing *Simpson v. James,* 903 F.2d 372, 376 (5th Cir.1990); *Hillerich & Bradsby Co. v. MacKay,* 26 F. Supp. 2d 124 (D DC 1998) ["**The question of whether an attorney-client relationship exists does not necessarily depend upon *who pays the fees.*"**(emphasis added)], among many others.

Accordingly, Shiboleth is wrong on the law regarding the existence of an attorney client relationship with Luv n' care.

## II.     The Narrowly Focused Issue

Shiboleth now burdens the Court and Luv n' care with a 658 page submission[3] arguing the unnecessary (and albeit highly unlikely) proposition that Mr. Shiboleth somehow does not reside at the house located in the Eastern District <u>that he owns</u> -- but instead, supposedly resides in an apartment <u>that he leases</u> within the Southern District. Compoundingly, Mr. Shiboleth further argues that he is not domiciled at either residence -- as he, with 20+ years practice in this country as a lawyer, founder of a United States law firm, property owner, etc., etc., is supposedly a domiciliary of the State of Israel. However, the Second Circuit has held that "domicile" can be established by an "intent to remain" that is "legal under immigration laws." *Lok v. I.N.S.*, 681 F.2d 107, 109 (2d Cir. 1982). Permanent resident status is not required. *Id.* Despite Mr. Shiboleth's <u>subjective</u> and self-serving state-

---

[3] This case was filed nearly two years ago, on August 22, 2013, and Shiboleth *et al*. still have not answered for their malpractice. Shiboleth *et al*. unfathomably argue in their (albeit belated) present motion that somehow it is Luv n' care that seeks delay.

ments, intent (including domiciliary intent, here) is determined according to objective manifestation, not self-serving affidavits.

But, however, the judicial resource need not be squandered on Shiboleth's attempt to burden the Court with complexity and irrelevancy, and thus Luv n' care does not engage.

Instead, the narrowly-focused issue before the Court is whether the unambiguous requirements of the Venue Statute control. Specifically, 28 USC §1391 states:

> (b) **Venue in General.—** A civil action may be brought in—
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (c) **Residency.—** For all venue purposes—
> (1) a natural person,… shall be deemed to reside in the judicial district in which that person is domiciled;

### III.   The Joint Tortfeasor Cohen Resides in the Eastern District.

As Shiboleth labors to point out, Attorney Morris E. Cohen is the nephew of the President/Owner of Luv n' care, Mr. Nouri Edward "Eddie" Hakim. Mr. Cohen is named and identified in the pending Amended Complaint, as follows:

> 7. Morris E. Cohen is a lawyer licensed to practice law in the State of New York, was held out to the public by Shiboleth LLP at its website to have been "Of Counsel" with Shiboleth, LLP, at the times and places pertinent hereto, is a citizen of the United States and maintains a residence at Brooklyn, New York, which is within the jurisdiction of the United States District Court for the Eastern District of New York.
>
> 15. At all times material hereto, Shiboleth represented to the Public including Luv n' Care that one Morris E. Cohen, Esq. held the status, authority and responsibilities of "Of Counsel" to the Shiboleth law firm, and expressly stated: "Morris E. Cohen is Of Counsel to the New York office. Morris began his legal career in 1994 and joined Shiboleth in 2008." Wherefore, Mr. Cohen had indicia of authority, if not actual authority, to act as an agent within the scope of his duties as a lawyer in behalf of the principal Shiboleth, and thus Shiboleth is bound via principles of *respondeat superior* thereby. Moreover, Shiboleth was aware that Mr. Cohen was representing Luv n' Care, and approved of and participated with Mr. Cohen in rep-

5

resenting Luv n' Care, stating on Shiboleth's website: "Recently, he served as lead counsel for the plaintiff in *Luv n' care, Ltd. v. Insta-Mix, Inc., et al.*, 438 F.3d 465 (5th Cir. 2006), *cert. denied*, 126 S. Ct. 2968, *reh'g. denied*, 127 S.Ct. 21 (2006)." *Id.*

17. Yet further, Shiboleth accepted material responsibilities, including (i) docketing and other administrative work, and moreover (ii) legal work performed by Defendants Cohen and Weisburg and other Shiboleth lawyers on and in regard to the lawsuit entitled *"Luv n' Care et al. v. Walgreen Co., et al.",* Case No. 08 CIV 4457 (DC/HP), and for which Shiboleth had billed, and which Luv n' Care paid.

20. The Members of Shiboleth, LLP had an uncompromising duty to supervise the work of the "Of Counsel" lawyers and non-lawyer employees of the Firm. And, Mr. Manuel as "Head of Litigation" for Shiboleth had an uncompromising duty to supervise the work of the lawyers in the firm and non-lawyer employees who did litigation work, and in particular those lawyers, including but not limited to Defendants Cohen and Weisburg who did litigation work for Luv n' Care. And Defendants Cohen and Weisburg had a duty to supervise the work of employee workers at Shiboleth who did work under their direction.

21. The Members of Shiboleth, LLP and Mr. Manuel, Mr. Cohen and Ms. Weisburg, utterly failed in their duties of adequate supervision, as set forth in the prior paragraphs hereof.

25. Shiboleth through its authorized agents Attorneys Cohen and Weisburg and others who are lawyers with Shiboleth and/or employees of Shiboleth did provide legal services to Luv n' Care in the said intellectual property litigation before the United States District Court for the Southern District of New York, the Complaint in such litigation having been filed on May 13, 2008. See Exhibit A hereof.

(See Second Amended Complaint; Doc. 39; filed 4/25/2015).

IV. **The Statute of Limitations Does not Run as to Joint Tortfeasors.**

As a threshold matter, Shiboleth cites no legal authority for its proposition that, as a co-defendant having joint and several liability, Shiboleth would somehow have standing to assert the Statute of Limitations for another co-defendant (Mr. Cohen). There is no such legal authority. Accordingly Shiboleth's argument should be rejected for the seminal reason of lack of standing. But, on both the procedural and substantive law, Shiboleth is also wrong.

6

Secondly, Shiboleth seeks inappropriately to generate a factual dispute on the merits in a dilatory motion to transfer or to dismiss regarding venue. Specifically, Shiboleth seeks to raise factual disputes for purposes of contradicting (i) the allegations of the pleadings, (ii) Shiboleth's own website, and (iii) the previously filed Declarations of Mr. Hakim and others (See, *e.g.,* Docs. 32-35; filed 8/15/2014, *supra*). However, in order to survive a motion to dismiss, a Complaint need only "contain sufficient factual matter, **accepted as true**, to state a claim to relief that is plausible on its face." (emphasis added). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

But, in any event, Shiboleth's divergent argument on the merits is without substance or merit. Specifically, Shiboleth struggles to create the bare contention, in citing to the *Tricoche*[4] case, that supposedly joint tortfeasors are not inherently "united in interest". (Shiboleth Brief, Doc. 44; filed 7/29/2015; page 29 of 33). They are. In fact, and in addition to its own acts of independent negligence, the Shiboleth Law Firm is yet further charged with liability via *respondeat superior* – which via derivative liability is the very essence of an inextricably intertwined "unity in interest". Specifically, Mr. Cohen (as agent) was "Of Counsel" to the Shiboleth law firm (as principal), and moreover worked directly with and under the supervision of other Shiboleth attorneys. Wherefore, Shiboleth's conclusory argument respecting a supposed lack of "unity of interest" between these joint tortfeasors is not meritorious.

---

[4] Thus, in relying upon *Tricoche* -- citing *Buran v. Coupal,* 87 NY2d 173, 177 (1995) -- even Shiboleth seems to recognize the established proposition of law that the filing of suit against one joint tortfeasor tolls the statue of limitations as to all joint tortfeasors.

### V.     The Statute of Limitations Does Not Run until March 17, 2016.

As noted in the Hakim Declaration (¶ 3), it was not until on or about March 17, 2013, that Mr. Cohen <u>for the first time</u> advised Luv n' care that: (a) he (Mr. Cohen), Shiboleth LLP and other attorneys at the Shiboleth law firm had failed to file on a timely basis either (i) Interrogatories, or (ii) Requests for Production, seeking defined and documentary sales information on the sales of the accused products; and that thus (b) the only available data were abbreviated, truncated sales figures identifying just a fraction of the actual, total sales, and this drastically reduced the quantum of damages recoverable.

As for the Shiboleth *et al.* defendants, they did not advise Luv n' care, **at all**.

In any case, the date of the end of counsel's concealment of the malpractice governs the statute of limitations for all defendants.

Secondly, addressing, *arguendo*, the Defendants' contention for alleged running of the Statute of Limitations under New York law, it concomitantly fails -- because this attorney-client relationship had continued until at least the SDNY's date of case termination (October 5, 2010). Wherefore, and inasmuch as the initial Complaint for malpractice was filed against Shiboleth *et al.* on May 31, 2013, there again is no genuine Statute of Limitations issue.

In summary, as defendants Shiboleth *et al.* have conceived, the relevant statute is three (3) years. It runs from the discovery of the actively concealed malpractice, and accordingly will expire in 2016. Defendants' conclusory allegation that the statute has somehow run, and without any discussion of the facts or dates involved, is frivolous.

### VI.     Mr. Cohen Was At All Times Fully Advised.

Notice to a joint tortfeasor (and perhaps even one who has actively concealed the tortious activity) may be important to assure that the statute of limitations will <u>not</u> have

8

run. Attached hereto is the Declaration of Eddie Hakim (incorporated herein for the sake of judicial efficiency) that fully establishes that Morris Cohen was at all times fully aware of and/or fully advised as to his malpractice. (See Exhibit A hereof). Manifestly, there has been no unfairness towards Mr. Cohen.

## Conclusion

As acknowledged by defendants, venue is demonstrably proper in the Eastern District because, *inter alia*, the joint tortfeasor, Mr. Cohen, resides here. This has been at least tacitly acknowledged by the defendants (Brief, p. 22). The contention that the statute of limitations has run vis-à-vis Mr. Cohen is specious, as this action is well within the three-year statute.

Respectfully submitted, this 13th day of August, 2015,

*/s/Anthony H. Handal*
Anthony H. Handal
N.Y. Fed. Bar No. AH5104
(Admitted in NY 1/16/75)
**Handal & Morofsky, LLC**
420 Lexington Avenue
Suite 300
New York, NY 10170
Phone: (646) 770-1010 handal@handalglobal.com
Of counsel:
Robert M. Ward
**Dilworth IP, LLC**
2 Corporate Drive
Suite 206
Trumbull, CT 06611
Telephone: (203) 220-8496
Mobile: (404) 606-6480
Facsimile: (203) 220-8497
 rward@dilworthip.com